IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT JACKSON
Assigned on Briefs April 7, 2020

### STATE OF TENNESSEE v. MARLANDO SHUNTELL STURGHILL and XAVIER TALIK-RASHOD MARTIN

**Appeal from the Circuit Court for Madison County**
**No. 17-237  Kyle C. Atkins, Judge**

_____

**No. W2019-00807-CCA-R3-CD**

_____

Marlando Shuntell Sturghill ("Mr. Sturghill") and Xavier Talik-Rashod Martin ("Mr. Martin") (jointly "Defendants") were convicted by a jury of aggravated robbery and sentenced to eight years' incarceration with release eligibility after service of eighty-five percent of their sentence.  In this consolidated appeal, both Defendants claim there was insufficient evidence to support the convictions.  After a thorough review of the record and briefs, we affirm the Defendants' judgments of conviction.

**Tenn. R. App. P. 3 Appeal as of Right; Judgments of the Circuit Court Affirmed**

ROBERT L. HOLLOWAY, JR., J., delivered the opinion of the court, in which CAMILLE R. MCMULLEN and ROBERT H. MONTGOMERY, JR., JJ., joined.

George Morton Googe, District Public Defender, and John D. Hamilton, Assistant District Public Defender, for the appellant, Marlando Shuntell Sturghill.

Daniel J. Taylor, Jackson, Tennessee, for the appellant, Xavier Talik-Rashod Martin.

Herbert H. Slatery III, Attorney General and Reporter; Renee W. Turner, Senior Assistant Attorney General; Jody Pickens, District Attorney General; and Bradley F. Champine, Assistant District Attorney General, for the appellee, State of Tennessee.

# OPINION

Mr. Sturghill and Mr. Martin were indicted by the Madison County Grand Jury for one count of aggravated robbery and one count of theft of property under $1,000. The theft count involved a different victim and was severed. Defendants were tried by a jury and convicted of aggravated robbery.

## Jury Trial

Shwanna Hunt testified that on December 26, 2016, she was working at the Exxon Express located on Hollywood Drive in Jackson ("Hollywood Exxon"). Shortly after 7:00 a.m., two men entered Hollywood Exxon with hoods pulled tightly around their faces so that only their eyes, nose, and mouth could be seen. One of the men, who was wearing a brown hooded jacket, stood near the door looking out toward the parking lot. The second man, who was dressed in a black sweatshirt with a red "A" on the front, pointed a black handgun at Ms. Hunt and demanded money. Ms. Hunt stated that she "was scared" and that she removed $226 from the cash drawer and handed it to the second man. He asked her where the safe was, and she said that they did not have a safe. She begged him not to kill her because she had three children. The men left, walking toward Rodeway Inn, which was adjacent to Hollywood Exxon. Ms. Hunt said that they were driving a white or cream-colored Chrysler 300. She activated the alarm and dialed 9-1-1.

Ms. Hunt was shown two photographic lineups, each consisting of six photographs. In the lineup that included a photograph of Mr. Martin, she identified another individual as the man in the black sweatshirt. In the lineup that included a photograph of Mr. Sturghill, she was not able to identify anyone as the man wearing the brown jacket. She testified that her primary focus was on the gun and that all she could see were the man's eyes, nose, and mouth because of the black hood. She said that she never got a good look at the face of the man in the brown jacket.

Jackson Police Department ("JPD") Investigator Darrell Listenbee was assigned as lead investigator of the robbery. As part of his investigation, he reviewed videos from various cameras located in the area near Hollywood Exxon looking for a Chrysler 300. He compiled the several videos into a single, chronological video, which the parties stipulated was admissible. He also produced numerous still photographs from the videos. He used a Google map of the area to show the location where each video was recorded.

In the video obtained from the Citgo Convenient Store ("the Citgo") located on Old Hickory Boulevard, a man can be seen exiting a white Chrysler 300 and going into the Citgo at approximately 6:48 a.m. In both the video taken from the camera outside the

Citgo and in a still photograph produced from the video, a piece of chrome trim is missing from passenger-side rear door of the Chrysler 300. From the video taken by the camera inside the Citgo and still photographs produced from the video, Investigator Listenbee identified Mr. Sturghill, whom he knew from prior encounters.

Investigator Listenbee obtained a video from a JPD pole camera located near Village Apartments. Village Apartments is adjacent to and immediately east of the Citgo. From this video, the Chrysler 300 can be seen parked at Village Apartments, and two men can be seen walking from the Chrysler to a wooden fence that separates the Citgo from Village Apartments. The men stood next to a hole in the fence for approximately four or five minutes. The men then got back into the Chrysler and drove away.

In the video from the JPD pole camera at the intersection of Old Hickory Boulevard and Honey Bear Drive, the Chrysler 300 can be seen driving toward Hollywood Drive. In the video obtained from Rodeway Inn, the Chrysler 300 can be seen circling the parking lot and then backing into a parking space. The video was recorded approximately thirteen minutes after the Citgo video. Rodeway Inn is located next to and to the south of Hollywood Exxon, and the two businesses have adjacent parking lots. From the Rodeway Inn video, Investigator Listenbee was able to obtain the Tennessee license plate number 095-KPY of the Chrysler 300. The video also shows that the Chrysler was missing a piece of chrome trim from the rear passenger-side door. After backing into the parking space, the men moved the Chrysler to another parking spot on same side of Rodeway Inn. The two men can be seen getting out of the Chrysler. One is wearing a brown jacket and the other man is wearing a black hoodie with a red "A" on the front. Investigator Listenbee identified Mr. Martin as the man in the black hoodie with a red "A" and Mr. Sturghill as the man wearing a brown jacket. The men then get back into the Chrysler and relocate the Chrysler to a parking space behind a truck. Mr. Martin can be seen getting out of the Chrysler with the hood of his sweatshirt pulled tight to cover a portion of his face. Mr. Sturghill is wearing a brown jacket with white strings drawing the hood around his face.

In the video from Hollywood Exxon, two men can be seen entering the store. Each man has a hood drawn tight around his face. The man in the brown jacket stops near the store entrance and faces out toward the parking lot. Ms. Hunt can be seen behind the counter. The man in the black hoodie can be seen pointing a gun at Ms. Hunt. According to Investigator Listenbee, the video shows that the man in the brown jacket is wearing a pair of black tennis shoes with "either a gray or white . . . small trim piece there on the bottom, kind of where the sole of the shoe is."

The final video chronologically was from Rodeway Inn, after the robbery. The man in the brown jacket had his hood down, and Investigator Listenbee again identified him as Mr. Sturghill. Investigator Listenbee testified that, as the man in the black sweatshirt ran back to the Chrysler, he "appear[ed] to be limping or kind of hopping" and that "it look[ed] like he's keeping a lot of pressure off of the left leg." The men got into the Chrysler and left.

After developing Mr. Martin and Mr. Sturghill as suspects, Investigator Listenbee obtained search warrants to search the residence where Mr. Martin lived and the residence where Mr. Sturghill lived. He also obtained search warrants for the Facebook accounts for both Defendants. From Mr. Martin's Facebook account, Investigator Listenbee obtained a photograph of Mr. Martin wearing a black hoodie sweatshirt with a red "A" on the front. From Mr. Sturghill's Facebook account, Investigator Listenbee obtained a photograph of Mr. Sturghill wearing a pair of black tennis shoes that appeared to have a gray or white marking where the sole attached to the upper part of the shoe. Investigator Listenbee testified that the shoes appeared to be the same shoes worn by the man in the brown jacket during the Hollywood Exxon robbery.

Marvin Rodish, an investigator with JPD at the time of the Hollywood Exxon robbery, assisted in executing a search warrant at Mr. Martin's residence located on Ayers Street in Jackson. He said that a white Chrysler 300, which was missing a piece of chrome trim from the passenger-side rear door and which had license plate number 095-KPY, was parked in front of the residence. After running the license plate number of the Chrysler 300 through a law enforcement database, Investigator Rodish determined that the vehicle was registered to Mr. Martin's mother, Shawanna Rutherford. Investigator Rodish found a plaque "sitting on top of the bed with the name Xavier Martin on it" and several parcels of mail addressed to Mr. Martin in a bedroom of the residence. He recovered a black handgun from the dresser in the bedroom and a black hoodie with a red "A" on the front in the adjacent closet. Investigator Rodish found a brown hooded jacket with white drawstrings in the Chrysler.

JPD Investigator Daniel Long assisted with the execution of a search warrant on Ayers Street in Jackson. He tagged the evidence obtained during the search, including a black Smith & Wesson .40-caliber semiautomatic handgun and the magazine and rounds for the handgun. He also tagged as evidence a black hoodie with a red "A" found in the bedroom and a brown hooded jacket found in the Chrysler.

JPD Investigator Robert Groves assisted in the execution of a search warrant at Mr. Sturghill's residence located at on Sunnyside Drive. During the search of a bedroom, he found receipts for medical supplies shipped to Mr. Sturghill and a personal letter from Mr. Sturgill's brother addressed to Mr. Sturghill.

- 4 -

JPD Investigator Michael Thomas also assisted with the execution of a search warrant at Mr. Sturghill's residence. Investigator Thomas recovered from a dresser drawer in the bedroom a black Ruger P85 nine-millimeter semiautomatic handgun with a full magazine of fifteen rounds. Investigator Thomas assisted in obtaining a search warrant for Mr. Sturghill's cell phone and his Facebook account under the alias "Head Huncho."

Officer Listenbee testified that, after the search warrants were executed, he sent several items secured during the searches, together with DNA samples obtained from Mr. Martin and Mr. Sturghill, to the Tennessee Bureau of Investigation (TBI) for DNA testing. The parties stipulated to the admission of the TBI forensic biology report. The DNA tests of the black handguns obtained during the searches had a mixture of at least two individuals and were inconclusive. The DNA tests of the brown jacket showed two major unknown male contributors and Mr. Sturghill as a minor contributor. Officer Listenbee stated that no fingerprints were recovered tying either Defendant to the crime scene.

Investigator Listenbee testified that, although he knew Mr. Sturghill from previous encounters, he first met Mr. Martin when Mr. Martin turned himself in a month after the robbery. He stated that Mr. Martin was on crutches and favored his left leg at the time he turned himself in.

Carmela Caravello, an AT&T employee, testified as custodian of Defendants' phone records. In response to a subpoena, she produced the records for Mr. Martin's mother's cell phone.

Investigator Groves used a program called "CellHawk" to interpret phone records and track "historical precision location information" for Mr. Martin's phone based on cell tower locations. Using a map of Jackson and cell tower locations, he traced the movement of Mr. Martin's phone from the Citgo to Hollywood Exxon. He testified that, the longer a phone is stationary, the more accurate the location. He stated that the estimate of accuracy shown for the location of Mr. Martin's phone was 2500 meters.

David Williams, Defendants' expert in wireless mobile phone location and technology, said Investigator Groves was "either misinformed or [his testimony was] misleading, that it lacked detail, and that [Investigator] Groves did not understand a lot of what [Investigator Groves] was attempting to testify about." He said that the 2500 meters range of accuracy covered a large area surrounding Hollywood Exxon and included the residence where Mr. Sturghill lived.

Following deliberations, the jury convicted Mr. Martin and Mr. Sturghill of aggravated robbery. After the trial court denied their motions for new trial, Defendants timely filed their notice of appeal. This court ordered the appeals to be consolidated.

## Analysis

In this appeal, Defendants contend that the evidence presented at trial was insufficient to sustain their convictions for aggravated robbery. The State argues that there was sufficient evidence to sustain the convictions. We agree with the State.

### *Standard of Review*

Our standard of review for a sufficiency of the evidence challenge is "whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Jackson v. Virginia*, 443 U.S. 307, 319 (1979) (emphasis in original); *see also* Tenn. R. App. P. 13(e). Questions of fact, the credibility of witnesses, and weight of the evidence are resolved by the fact finder. *State v. Bland*, 958 S.W.2d 651, 659 (Tenn. 1997). This court will not reweigh the evidence. *Id*. Our standard of review "is the same whether the conviction is based upon direct or circumstantial evidence." *State v. Dorantes*, 331 S.W.3d 370, 379 (Tenn. 2011) (quoting *State v. Hanson*, 279 S.W.3d 265, 275 (Tenn. 2009)) (internal quotation marks omitted).

A guilty verdict removes the presumption of innocence, replacing it with a presumption of guilt. *Bland*, 958 S.W.2d at 659; *State v. Tuggle*, 639 S.W.2d 913, 914 (Tenn. 1982). The defendant bears the burden of proving why the evidence was insufficient to support the conviction. *Bland*, 958 S.W.2d at 659; *Tuggle*, 639 S.W.2d at 914. On appeal, the "State must be afforded the strongest legitimate view of the evidence and all reasonable inferences that may be drawn therefrom." *State v. Vasques*, 221 S.W.3d 514, 521 (Tenn. 2007). "A jury verdict approved by the trial judge accredits the testimony of the witnesses for the State and resolves all conflicts in favor of the State's theory." *State v. Williams*, 657 S.W.2d 405, 410 (Tenn. 1983).

### *Aggravated Robbery*

"Robbery is the intentional or knowing theft of property from the person of another by violence or putting the person in fear." Tenn. Code Ann. § 39-13-401(a) (2016). As applicable to this case, aggravated robbery is robbery "accomplished with a deadly weapon or by display of any article used or fashioned to lead the victim to reasonably believe it to be a deadly weapon." Tenn. Code Ann. § 39-13-402(a) (2016).

Based on the video evidence and testimony presented at trial, Mr. Martin and Mr. Sturghill drove Mr. Martin's mother's white Chrysler 300 with license plate number 095-KPY and missing a piece of chrome trim from the passenger-side rear door to the Citgo, then to the adjacent Village Apartments, and then to Rodeway Inn, where they parked the vehicle. Rodeway Inn is adjacent to Hollywood Exxon. Mr. Sturghill, who was wearing a brown hooded jacket with white drawstrings, and Mr. Martin, who was wearing a black hoodie sweatshirt with a red "A" on the front, can be seen getting out of the Chrysler. In the video from Hollywood Exxon and in the still photographs from the video, Mr. Martin and Mr. Sturghill can be seen entering Hollywood Exxon in the same clothing they were wearing in the Rodeway Inn video and with their hoods pulled tightly to partially hide their faces. Mr. Sturghill can be seen standing by the entrance to Hollywood Exxon, and Mr. Martin can be seen pointing a black handgun at Ms. Hunt. Ms. Hunt testified that she was frightened, that she gave the man $226 from the cash drawer, and that she begged for them not to kill her. In the post-robbery Rodeway Inn video, Mr. Martin and Mr. Sturghill can be seen returning to the white Chrysler 300. Mr. Martin was limping. Mr. Martin's Facebook account included a photograph of Mr. Martin in a black hoodie sweatshirt with a red "A" on the front. A black handgun and a black hoodie with a red "A" on the front were found in Mr. Martin's bedroom. His mother's white Chrysler 300 with license plate number 095-KPY and missing a piece of chrome trim from the passenger-side rear door was parked in front of his residence. A brown hooded jacket with white drawstrings was found in the Chrysler 300. The Facebook account for Mr. Sturghill included a photograph of Mr. Sturghill wearing tennis shoes similar in appearance to the tennis shoes worn during the robbery. A black handgun was found in the dresser of Mr. Sturghill's bedroom. Mr. Sturghill's face is clearly visible in the video from the Citgo, and Investigator Listenbee identified him based on previous interactions. Even without DNA, fingerprints, or the victim's identification of Defendants, and disregarding the phone records and cell tower location evidence, the proof of guilt of both Defendants was overwhelming.

**Conclusion**

Based on the overwhelming evidence presented by the State during the trial, "*any rational trier of fact could have found the essential elements*" of aggravated robbery "beyond a reasonable doubt." *Jackson*, 443 U.S. at 319. The aggravated robbery conviction for Mr. Martin and the aggravated robbery conviction for Mr. Sturghill are affirmed.

_____
ROBERT L. HOLLOWAY, JR., JUDGE